# IN THE UNITED STATE COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## No. 20-2400

UNIFORMED FIRE OFFICERS ASSOCIATION, *et al.*,

*Plaintiffs-Appellants*,

v.

BILL DE BLASIO, in his official capacity
as Mayor of the New York City, *et al.*,

*Defendants-Appellees*,

And THE NEW YORK TIMES COMPANY

*Intervenor.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK, No. 20-CV-05441-KPF

## THE NEW YORK CIVIL LIBERTIES UNION'S MEMORANDUM IN OPPOSITION TO MOTION TO STAY

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION

CHRISTOPHER DUNN
MOLLY K. BIKLEN
125 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 607-3300

August 13, 2020

**Table of Contents**

PRELIMINARY STATEMENT ...............................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...........................................3

ARGUMENT....................................................................................................8

   I.   The Relief the Unions Seek is a Prior Restraint that Plainly Would Violate the First Amendment ......................................................................................8

   II.   Rule 65 Does Not Authorize the Relief the Unions Seek, and They Cannot Meet the Other Requirements for a Stay .....................................................16

CONCLUSION .................................................................................................21

i

## Table of Authorities

**Cases** .................................................................................................... **Page(s)**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ......................................14

*Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930) ..................................17, 18

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) ..................................9

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ................................................ 10, 13, 15

*Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175 (1968)..............15

*CBS, Inc. v. Davis*, 510 U.S. 1315 (1994) ................................................9

*D.L. Cromwell Investments, Inc. v. NASD Regulation, Inc.*, 279 F.3d 155 (2d Cir. 2002) ............................................................................14

*Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297 (2d Cir. 1999)......16

*Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010)......................................17

*Elrod v. Burns*, 427 U.S. 347 (1976)......................................................................20

*Florida Star v. B.J.F.*, 491 U.S. 524 (1989) ..............................................12

*Herrlein v. Kanakis*, 526 F.2d 252 (7th Cir. 1975) ..............................................18

*Leon v. Murphy*, 988 F.2d 303 (2d Cir. 1993) ........................................................13

*Met. Opera Ass'n v. Local 100*, 239 F.3d 172 (2d Cir. 2001) ...........................9, 13

*Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931) ....................................10, 12

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ..............................................9

*New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483 (2d Cir. 2013) ..............21

*New York Times Co. v. United States*, 403 U.S. 713 (1971) ................... 9, 10, 12, 15

*O & L Assocs. v. Del Conte*, 601 F. Supp. 1463 (S.D.N.Y. 1985) .........................18

*ONE11 Imports Inc. v. NuOp LLC*, No. 16-CV-7197, 2016 WL 7338422 (S.D.N.Y. Dec. 19, 2016) ............................................................................18

ii

*Paramount Pictures Corp. v. Carol Pub. Grp., Inc.*, 25 F. Supp. 2d 372 (S.D.N.Y. 1998) ................................................................................................18

*Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9 (1945)..........................................16

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) ...................................................14

*Spin Master Ltd. v. 158*, No. 18-CV-1774 (LJL), 2020 WL 2766104 (S.D.N.Y. May 28, 2020)..............................................................................19

*Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308 (2d Cir. 2003) ............................14

*United Pharmacal Corp. v. United States*, 306 F.2d 515 (1st Cir. 1962)...............17

*United States v. Quattrone*, 402 F.3d 304 (2d Cir. 2005) .................................9, 12

*United States v. Stein*, 541 F.3d 130 (2d Cir. 2008)...........................................14

## Other Authorities

Hon. Mary Jo White et al., *The Report of the Independent Panel on the Disciplinary System of the New York City Police Department* (Jan. 25, 2019), https://www.independentpanelreportnypd.net/pages/18.html ...........20

Michael Gartland and Rocco Parascandola, *NYC Mayor Wants Disciplinary Records for Firefighters and Correction Officers Posted Online, Just Like Police*, N.Y. Daily News (June 29, 2020), https://www.nydailynews.com /new-york/nyc-crime/ny-50-a-de-blasio-fndy-correction-department-20200629-az6br44mcbbclbg2rbcf24x6ii-story.html....................................4

ProPublica, *Civilian Complaints Against New York City Police Officers* (July 2020) https://www.propublica.org/datastore/dataset/civilian-complaints-against-new-york-city-police-officers .............................................................7

S.8496, 243rd N.Y. Leg. Sess. 2020 ...................................................................3

**PRELIMINARY STATEMENT**

Before this Court is a motion by plaintiff-appellant uniformed-officer unions seeking extraordinary relief that would bar the New York Civil Liberties Union from publishing a police-misconduct database it obtained through an open-records request following New York's recent repeal of its statutory provision that shielded from public view information about misconduct by police officers, corrections officers, and firefighters. In the month between that June 12 repeal and the July 14 production of the database to the NYCLU by the Civilian Complaint Review Board ("CCRB"), the New York City agency that investigates complaints against NYPD officers, that same agency produced similar police-misconduct information in response to 67 open-records requests from news organizations, researchers, and individuals. Those disclosures resulted in substantial and ongoing reporting about civilian complaints, police misconduct, CCRB investigations, and NYPD disciplinary practices, as well as the posting on the internet of a significant portion of the database provided to the NYCLU.

The NYCLU, however, has been barred since July 22 from publishing the database as the result of a lawsuit the plaintiff-appellant unions ("the Unions") filed against New York City after the NYCLU had obtained the database. The district court rightly rejected the Unions' request to enjoin the NYCLU's publication once the issue was briefed, but they now ask this Court to bar

publication for what could be months pending adjudication of their appeal of the district court's decision. But the Unions do not even attempt to argue their requested prior restraint meets the exacting First Amendment standard for such a restraint, and it plainly does not. As for the prior-restraint arguments they do offer – that this Court should not reach the issue and that the NYCLU is a state actor and therefore has no First Amendment rights – they are patently without merit.

Beyond the insurmountable First Amendment barrier, the Unions' motion also fails as the NYCLU is not a party to the underlying case. While Rule 65 of the Federal Rules of Civil Procedure does authorize injunctions against nonparties in narrow circumstances, it does not apply here where the NYCLU obtained the police-misconduct database *before* any order had been issued in the underlying case (indeed, before the case was even filed). And timing aside, nothing about the NYCLU having obtained the database through an open-records request remotely approaches the type of concerted effort to thwart a court order that can bring nonparties within Rule 65. As for the Unions' breathless claims the CCRB conspired with the NYCLU, nothing in the record supports those claims, and they are wholly undermined by a key fact that the Unions remarkably do not even acknowledge to this Court: during the period the CCRB received and processed the NYCLU's FOIL request for section 50-a records, it also received and processed over 70 requests for similar records and produced records on a schedule similar to

2

its production to the NYCLU.[1] Simply put, nothing before this Court supports the

Unions' request for an injunction under Rule 65 against the nonparty NYCLU,

much less supports a prior restraint on its First Amendment right to publish the

police-misconduct information it has.

## FACTUAL AND PROCEDURAL BACKGROUND

For over forty years, section 50-a of New York's Civil Rights Law made

secret vast amounts of information bearing on police accountability. On June 10,

2020, in the wake of nationwide protests following the police killing of George

Floyd, the New York State Legislature voted to repeal section 50-a as part of a bill

aimed at improving police transparency and accountability. Governor Andrew

Cuomo signed that bill into law, and it became effective immediately on June 12,

2020. *See* S.8496, 243rd N.Y. Leg. Sess. 2020.

As the New York City agency that receives and investigates complaints from

civilians about misconduct by NYPD officers, the CCRB possesses extensive

records, including databases, containing information that had been subject to

section 50-a. Declaration of Christopher Dunn ¶¶ 5, 7 (Aug. 13, 2020) ("Dunn

Decl."). Almost immediately after the repeal of section 50-a, New York City

officials announced their intent to make disciplinary records publicly available, and

---

[1] This figure includes the 67 requests that preceded the July 14 production to the NYCLU and three that followed it before the CCRB was enjoined from further production.

3

individuals and news organizations began filing requests with the CCRB under the state's Freedom of Information Law ("FOIL").[2] Between June 12 and July 20, the CCRB produced records in response to 71 such requests, ranging from datasets like that sought by the NYCLU to individual officer histories and redacted complaint reports. *Id.* ¶ 16, Ex. C, at 2–6. The CCRB filled over half of these (41) in three or fewer business days, *see id.*, the same time it took to fill the NYCLU's request.

The NYCLU has a long history of obtaining important information from the government through FOIL and the federal Freedom of Information Act and making that information public for purposes of public education and advocacy. Dunn Decl. ¶¶ 3-4. The day after a July 8, 2020 public meeting at which the CCRB announced it would provide public access to its database of civilian complaints, the NYCLU submitted a FOIL request to the CCRB seeking the complete allegation histories of each active and retired member of the New York City Police Department. *Id.* ¶ 8, Ex. A. On July 14 the NYCLU received through the New York City open-records portal a formal response in the form of a database (spreadsheet) containing information relating to approximately 81,000 current and former NYPD officers who have faced complaints from the public involving excessive force, abuse of

---

[2] *See* Michael Gartland & Rocco Parascandola, *NYC Mayor Wants Disciplinary Records for Firefighters and Correction Officers Posted Online, Just Like Police*, N.Y. Daily News (June 29, 2020), https://www.nydailynews.com/new-york/nyc-crime/ny-50-a-de-blasio-fndy-correction-department-20200629-az6br44mcbbclbg2rbcf24x6ii-story.html.

authority, discourtesy, and offensive language. Dunn Decl. ¶ 9, Ex. B. The database shows the officer's name, rank, precinct or other command, a brief categorization of the complaint, the CCRB's finding about the validity of the complaint, the NYPD's subsequent finding about the validity of the complaint, and any discipline the NYPD imposed. *Id.* ¶ 10. The database contains no personal officer information, such as home addresses or phone numbers.

Once it received and reviewed the database, the NYCLU worked to create a tool to make it easy for members of the public to search the database. *Id.* ¶ 12. The NYCLU was ready to make the entire database and search tool available to the public at noon on July 23. *Id.* ¶ 13.

Late on July 14 – after the CCRB had produced the database to the NYCLU and responded to numerous other FOIL requests for section 50-a material in the month following the law's repeal – the Unions filed their action in state court. The NYCLU was not named as a party and to this day is not a party to those proceedings. The following day the Unions obtained a temporary restraining order against the City defendants, and the City removed the case to the Southern District of New York.

On July 22, the district court held a hearing about the TRO. The NYCLU sought and was granted permission to appear as amicus curiae given its extensive involvement in disputes regarding section 50-a and work supporting government

5

accountability and addressing law-enforcement misconduct. *See* Dkt. 66, Declaration of Anthony Coles (Aug. 6, 2020) ("Cole Decl."), Ex. B, July 22, 2020 Hr'g Tr., at 6:25–9:4. At this hearing, the defendants identified a few of the disclosures the CCRB already had made prior to the stay entered by the state court, including the FOIL response to the NYCLU. *Id.* at 11:3-21.

After hearing argument from the parties, the district court continued the TRO against the City defendants pending a preliminary-injunction hearing on August 18. Without notice to the NYCLU that it was considering such an order, without knowing the details of the CCRB's voluminous section 50-a productions, and without argument on the issue, the district court ordered the NYCLU not to publish the CCRB information, relying on its conclusion the NYCLU was "acting in concert" with the CCRB because of what it viewed as the unusual speed of the agency's response to the NYCLU's FOIL request. *See id.* at 79:13–15; 80:6–13, 88:8–11, 88:14–19. The NYCLU immediately objected, and the court agreed the NYCLU could file written objections the following day.

On July 23, the NYCLU moved to dissolve the temporary restraining order against its publication of the data, arguing the district court's order was an impermissible prior restraint and was not authorized by Rule 65. Cole Decl., Ex. C. After receiving briefing from the parties, the district court scheduled a hearing for July 28 on the NYCLU's motion.

6

Meanwhile, on July 26 the news outlet ProPublica posted on the internet the database it had obtained from the CCRB on June 30, disclosing information, including non-final, exonerated, and unsubstantiated complaints, regarding over 4,000 NYPD officers.[3] And shortly before the July 28 hearing, the City notified the district court of the CCRB's voluminous production of documents previously covered by section 50-a in response to the 71 FOIL requests filed between June 12 and July 20. Dunn Decl., Ex. C. The City also disclosed in that filing that the Legal Aid Society had obtained from the CCRB the entire database the agency had produced to the NYCLU. The Unions have not sought to enjoin the Legal Aid Society, and it remains free to disseminate the complete database.

Having received the NYCLU's briefing and the additional information from the City, the district court readily concluded at the July 28 hearing that it had erred in holding that Rule 65 conferred power to restrain the NYCLU based on actions preceding the entry of any court order against the CCRB, and further noted that the NYCLU's argument regarding a prior restraint was "quite strong." *See* Cole Decl. Ex. E, July 28, 2020 Hr'g Tr., at 30:2–4. The court therefore modified its order and lifted the restraint against the NYCLU's publication of the CCRB information,

---

[3] *See* ProPublica, *Civilian Complaints Against New York City Police Officers* (July 2020), https://www.propublica.org/datastore/dataset/civilian-complaints-against-new-york-city-police-officers.

though it stayed its own order for 24 hours to permit the Unions an opportunity to seek relief from this Court. Dist. Ct. Dkt. 38; Cole Decl., Ex. E at 30:6–11.

## ARGUMENT

I.     **The Relief the Unions Seek is a Prior Restraint that Plainly Would Violate the First Amendment.**

The First Amendment bars the relief the Unions seek. Whether understood as a request for a stay pending appeal or as an affirmative request for injunctive relief, the undisputable effect of granting the Union's request would be to bar the NYCLU from publishing vitally important information about police misconduct and discipline it already possesses. Such an order plainly would be a prior restraint, and the Unions do not even attempt to suggest they can meet the exacting standard for such a restraint. Rather, they argue this Court should not address the issue and that the NYCLU is a state actor without First Amendment rights, but these arguments are entirely without merit.

The NYCLU long has used information obtained through open-records requests to publish reports based on that data. Dunn Decl. ¶ 4. To take one relevant example, the NYCLU filed a FOIL request in 2007 seeking the NYPD's database of stop-and-frisk activity and then published an extensive report based upon the database it obtained, which led to significant public and political discussion of the issue. *Id.* Similarly, the data at issue here regards the conduct of government officials at a moment when there is significant momentum for legislative reform

8

and accountability and national attention to police misconduct. *Id.* ¶ 15 (citing articles).

Prior restraints constitute "the most serious and the least tolerable infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), and are subject to a "'heavy presumption'" against constitutional validity, *United States v. Quattrone*, 402 F.3d 304, 310 (2d Cir. 2005) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)). "Even where questions of allegedly urgent national security, or competing constitutional interests are concerned, [the Supreme Court has] imposed this 'most extraordinary remed[y]' only where the evil that would result from the reportage is both great and certain and cannot be mitigated by less intrusive measures." *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers) (citing *New York Times v. United States*, 403 U.S. 713, 713 (1971) (the "*Pentagon Papers*" case) and *Nebraska Press Ass'n*, 427 U.S. at 559). As this Court has noted, "[w]hen a prior restraint takes the form of a court-issued injunction, the risk of infringing on speech . . . increases." *Met. Opera Ass'n v. Local 100*, 239 F.3d 172, 176-77 (2d Cir. 2001).

The Supreme Court's decision in *Pentagon Papers* squarely establishes that an injunction against the NYCLU's publication of the CCRB information violates the First Amendment. In *Pentagon Papers*, the Supreme Court upheld the right of

9

the press to publish information of national concern obtained from documents stolen by another entity. *See* 403 U.S. at 714. As the Court recognized in *Bartnicki v. Vopper*, 532 U.S. 514 (2001), in denying an injunction against publication, *Pentagon Papers* "resolved a conflict between the basic rule against prior restraints on publication and the interest in preserving the secrecy of information that, if disclosed, might seriously impair the security of the Nation." *Id.* at 528. The concurring justices of the *Pentagon Papers* Court concluded that exceptions to the rule against prior restraints were exceedingly narrow and could rarely be justified. *See, e.g.*, 403 U.S. at 730 (Stewart J., concurring) (no prior restraint where disclosure not shown to "surely result in direct, immediate, and irreparable damage to our Nation or its people"); *id.* at 726–27 (Brennan, J., concurring) ("[O]nly governmental allegation and proof that publication must inevitably, directly, and immediately cause the occurrence of an event kindred to imperiling the safety of a transport already at sea can support even the issuance of an interim restraining order.") (citing *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 716 (1931)).

Although the NYCLU has raised the prior restraint case law in its filings to the district court and this Court, the Unions do not address these cases and do not argue that they can meet the exacting First Amendment standards they establish. *See* Dkt. 66, Br. for Appellants-Movants ("Unions' Br.") at 16-19. This is no surprise as nothing in this dispute presents a situation that would justify a prior

10

restraint. For instance, the Unions' claim of harm, *at most*, involve generalized allegations that such disclosures will undermine the credibility of police and lead to hostility, which may threaten the safety of officers. *See* Unions' Br. at 12, 21. But this is speculative and contradicted by the record.

Between June 12 and the July 20, the CCRB responded to 71 FOIL requests with information formerly covered by section 50-a, and ProPublica published its database containing the information on unsubstantiated, exonerated and non-final complaints for over 4,000 current police officers. Dunn Decl. ¶ 16, Ex. C. Despite these voluminous disclosures and widespread reporting that they prompted, the Unions do not identify a single example of any resulting harm to a single police officer. Tellingly, they cite only news accounts of two incidents (one from 2017) that have nothing to do with the release of section 50-a materials. *See* Unions' Br. at 12, 21. Moreover, many states release just this type of information as a matter of course, *see infra* page 20 n.6, and the Unions do not identify any incidents of harm arising from those disclosures. And contrary to the Unions' unsupported claim that this information will undermine police credibility, there is every reason to believe, as did the New York Legislature in passing section 50-a's repeal and Governor Cuomo in signing it, that disclosing this information will lead to greater public trust. *See, e.g.*, Governor Andrew M. Cuomo, *Press Release: Governor Cuomo Signs 'Say Their Name' Reform Agenda Package* (June 12, 2020), https://www

11

.governor.ny.gov/news/governor-cuomo-signs-say-their-name-reform-agenda-package ("[T]hese nation-leading reforms will make long overdue changes to our policing and criminal justice systems while helping to restore community confidence in law enforcement.").

The Unions' speculation does not amount to the irreparable harm necessary for an injunction, let alone the concrete, immediate, and particularized danger required for the extraordinary measure of a prior restraint. *See Quattrone*, 402 F.3d at 310. And in contrast to future troop movements, which the Supreme Court has noted might justify the extraordinary measure of a prior restraint, *Near*, 283 U.S. at 716, the complaint information here, as in *Pentagon Papers*, involves past events. *See* 403 U.S. at 722 n.3 (Douglas, J., concurring).

Similarly, the Unions' assertions of reputational harm in future employment prospects, beyond being entirely speculative, plainly fall short of justifying a prior restraint.[4] *See* Unions' Br. at 12–13. The First Amendment protects the right to disclose sensitive information – even when it relates to the conduct of *private persons*, much less that of government employees in the line of duty – where it pertains to a matter of public concern. *See Bartnicki*, 532 U.S. at 535; *Florida Star*

---

[4] The Unions' claimed harm from the impairment of contractual collective bargaining rights, Unions' Br. at 13, is also misplaced. The information at issue here does not pertain to the officers' "personnel files" but, as they concede, is maintained by the CCRB.

*v. B.J.F.*, 491 U.S. 524, 536–37 (1989) (holding that First Amendment protected newspaper from liability for publishing name of sexual assault victim, notwithstanding that such publication violated state law, because the article "involved a matter of paramount public import"). Furthermore, the Second Circuit has "for almost a century" subscribed to the majority view "that equity will not enjoin a libel," for which any remedy must be damages. *Met. Opera*, 239 F.3d at 177.

Finally, the Unions do not mention that another organization possesses, and is free to disseminate, the very information the NYCLU is enjoined from publishing. This undermines any claim that an injunction against the NYCLU will prevent even the remote possibility of irreparable harm, as such a restraint will do nothing to prevent the CCRB information at issue here from becoming public.

Undeterred that the Supreme Court has foreclosed the relief they seek, the Unions contend this Court could bar the NYCLU's publication without considering the prior restraint. Their arguments are without merit. First, that the district court did not reach the issue in denying the TRO, *see* Unions' Br. at 17, is of no moment; the NYCLU presented the issue, it was briefed below, Cole Decl., Ex. C, and it provides an alternative ground for affirming the district court's denial, which of course this Court can consider. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993) ("[The Court] may affirm . . . on any basis for which there is a record

13

sufficient to permit conclusions of law, including grounds upon which the district court did not rely.").

Second, the Unions make the farfetched assertion the NYCLU lacks First Amendment rights to publish the CCRB data because, by receiving data promptly through a public records request, the NYCLU is a state actor and the "mouthpiece" of the City defendants. *See* Unions' Br. at 17–19. They fail, however, to identify a single case where a court has found state action in such circumstances. *See, e.g.*, *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) (discharge by publicly-funded university; no state action); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 169–71 (1970) (state action where restaurant discriminated as "commanded . . . by [state] law"). Indeed, no such case exists. As well-established law makes clear, state coercion or control is necessary—participating in a state process like FOIL or even coordinating with government officials is not enough. *Compare Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 313 (2d Cir. 2003) (no state action where state approved corporate reorganization but did not "order" reorganization or employ "coercion or control") *and D.L. Cromwell Investments, Inc. v. NASD Regulation, Inc.*, 279 F.3d 155, 162 (2d Cir. 2002) (no state action where private entity conducted parallel and cooperative investigation with state agency, including formal and informal document sharing), *with United States v. Stein*, 541 F.3d 130, 146–51 (2d Cir. 2008) (state action where "the government forced" entity to adopt

14

challenged policy under threat of prosecution). Here, there is simply no evidence that the CCRB controlled or coerced the NYCLU.

Third, the Unions suggest that this Court extend the prior restraint against the NYCLU and remand the case for "further factual development" about the NYCLU's alleged "role in assisting Defendants-Appellees." Unions' Br. at 19. Setting aside the undisputed fact the NYCLU's FOIL request was but one of many similar requests the CCRB filled, Supreme Court precedent makes clear that even if the CCRB acted unlawfully in disclosing information (which it did not) and even if the NYCLU knew or had reason to believe the action was unlawful (which it did not), the First Amendment prohibits the punishment—much less enjoining—of the NYCLU's publication of that information. *See Bartnicki*, 532 U.S. 514 (holding that knowing recipient of illegally intercepted recording on matter of public concern could not be held liable for its publication); *Pentagon Papers,* 403 U.S. 713 (upholding right of newspapers to publish stolen classified study of Vietnam War). No amount of discovery regarding the transmittal of the information could justify a prior restraint, and such an order would result in the routine imposition of prior restraints while plaintiffs go fishing in an attempt to halt the publication of every whistleblower report and government leak. That is not the law in a nation built upon freedoms of speech and press. *See Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 181 (1968) ("Prior restraint upon speech suppresses

15

the precise freedom which the First Amendment sought to protect against abridgment.").

## II. Rule 65 Does Not Authorize the Relief the Unions Seek, and They Cannot Meet the Other Requirements for a Stay.

Even if this were a case that did not involve a prior restraint and presented only a conventional motion for a stay pending appeal, the Unions' motion should be denied because it does not meet the well-established standards governing such stay motions. Starting with the merits, the Unions cannot show they are likely to prevail on their appeal of the district court's conclusion that Rule 65 does not authorize relief against the NYCLU given the undisputed fact that no judicial order was in place – indeed, no lawsuit even filed – when the CCRB responded to the NYCLU's FOIL request. Moreover, nothing in the record establishes the NYCLU acted in concert with the CCRB or any of the defendants within the meaning of Rule 65.

Rule 65(d) does not authorize an injunction against nonparties for acts that precede litigation and do not aid or abet a party to violate a court order. *See Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 303 (2d Cir. 1999) (modifying injunction to the extent it barred nonparties from conduct that did not aid or abet the defendants in violating injunctions entered against them). As the Supreme Court explained in *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9 (1945), Rule 65(d)(2) is meant to codify the common law doctrine that "defendants may

16

not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Id.* at 14. But this has no application to conduct before any decree has been issued (much less before any proceeding was instituted). *See Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930) (Hand, L.) ("[T]he only occasion when a person not a party may be punished is when he has helped to bring about, not merely what the decree has forbidden, . . . but what it has the power to forbid, an act of a party."); *United Pharmacal Corp. v. United States*, 306 F.2d 515, 517 (1st Cir. 1962) (explaining "the question is not what [they] had been doing" prior to the injunction but whether the nonparty "aided and abetted [the party] in violating the preliminary injunction").

This Court's decision in *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010), makes clear that Rule 65's nonparty provisions require *some* kind of court order that the nonparty's actions implicate. In affirming the injunction against a nonparty entered by the district court, this Court examined the language of Rule 65(d)(2) and considered whether aiding and abetting the breach of a protective order entered during discovery gives the "issuing court jurisdiction over the nonparty aider and abettor to enjoin him from continuing those actions." *Id.* at 195. In other words, the threshold question was whether there was a court order for the nonparty to assist a party in violating. This Court answered the question in the

17

affirmative, noting that a protective order is akin to an ongoing injunction and thus Rule 65 could reach the nonparty's actions in defiance of that order. *Id.* at 195–96. By contrast, the NYCLU obtained the database through a lawful records request prior to *any* litigation, and there was no order of any kind that could have been thwarted. *See ONE11 Imports Inc. v. NuOp LLC*, No. 16-CV-7197 (JPO), 2016 WL 7338422, at \*2 (S.D.N.Y. Dec. 19, 2016) (holding that because nonparty obtained the offending products prior to entry of the injunction, the "Court's preliminary injunction Order does not, therefore, 'reach backwards in time to action taken prior to the time it was issued'" (quoting *Paramount Pictures Corp. v. Carol Pub. Grp., Inc.*, 25 F. Supp. 2d 372, 375 (S.D.N.Y. 1998)); *O & L Assocs. v. Del Conte*, 601 F. Supp. 1463, 1464 (S.D.N.Y. 1985) (Weinfeld, J.) (nonparty Columbia Pictures not bound by injunction where it had entered into licensing agreement after lawsuit commenced but before the injunction was issued);[5] *see also Herrlein v. Kanakis*, 526 F.2d 252, 255 (7th Cir. 1975) (nonparties not bound by injunction because transfer of assets "occurred before the lawsuit against [the defendants] was initiated and thus could not have been undertaken to defy the court's order"). Even if a nonparty had anticipated litigation about the repeal of section 50-a, a perceived likelihood of litigation does not expand a court's

---

[5] As against the numerous in-Circuit authorities cited by the District Court and the NYCLU, the Unions identify two out-of-circuit decisions by magistrate judges that cite no authority supporting their interpretation of Rule 65. *See* Unions' Br. at 15.

18

equitable powers. *See Alemite Mfg. Corp.*, 42 F.2d at 832 (injunctions regulate conduct of a party).

Timing aside, there is no basis to conclude that the NYCLU was in active concert with the CCRB. *See Spin Master Ltd. v. 158*, No. 18-CV-1774 (LJL), 2020 WL 2766104, at *20 (S.D.N.Y. May 28, 2020) (noting that "in concert" finding "requires showing that the non-party had actual knowledge of the judicial decree and violated it, and that the challenged action was taken for the benefit of, or to assist, a party subject to the decree") (internal quotation marks and citation omitted). The Unions make much of the district court's discussion of the purported "speed" of the CCRB's disclosure and that members of the NYCLU attended a public meeting with the CCRB prior to the NYCLU's records request. Unions' Br. at 16. And they infer all manner of conspiracy from this. But the district court made those statements before receiving evidence revealing that nothing about the CCRB's response to the NYCLU was unusual. In the period between June 12 and July 20, the CCRB responded to 71 FOIL requests for section 50-a materials, and did so within three business days for 41 of these requests and on the same day for 14 of them. *See* Dunn Decl., Ex. C at 2-6. Indeed, upon this evidence, the Unions make clear that they have no basis to suggest that ProPublica was in active concert with the City, although they obtained a significant portion of the database on June 30, only four business days after the request. Cole Decl., Ex. E at 12:24-13:2. And

19

the Unions' suggestion of a secret conspiracy is undermined by the fact, as they concede, that the City had publicly announced as early as June 29 an intention to make these records available to the public. *See* Dkt. 66, Ex. G at 5 & n.2 (citing news reporting).

In addition to their failure to show a likelihood of success on the merits, the Unions cannot establish irreparable harm as is discussed above. In fact, a stay will substantially injure the NYCLU and the public interest. The NYCLU already has been delayed three weeks from its planned publication—at a time when there is widespread public interest and desire for political reform in issues of police misconduct and accountability. Because each day the NYCLU is unable to publish the information in its possession prevents it from sharing vital information related to government accountability and is an intolerable burden on its First Amendment rights, the NYCLU and the public would be substantially injured by a stay further delaying publication. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

Contrary to the Unions' suggestion that the public has only a *de minimis* interest in information they have been denied for decades, Union Br. at 20, section 50-a's repeal and the public debate about police accountability underscores the

20

value of the information that many states already provide to their residents.[6] New Yorkers are currently engaged in a local and national conversation about – and movement for – police accountability. A prior restraint on the NYCLU's ability to share important information about this very issue constrains that conversation and substantially injures the public. *See New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (explaining that the harm of delay of political speech is particularly intolerable). Denying the public access to critical information about civilian complaints, police misconduct, CCRB investigations, and NYPD disciplinary practices severely disserves the public interest.

## CONCLUSION

For the foregoing reasons, the Court should deny the Unions' motion for a stay restraining the NYCLU from publishing the database from the CCRB in its possession.

---

[6] *See*, *e.g.*, Hon. Mary Jo White et al., *The Report of the Independent Panel on the Disciplinary System of the New York City Police Department* (Jan. 25, 2019), https://www.independentpanelreportnypd.net/pages/18.html (citing 13 states that make internal police records open to the public).

Respectfully submitted,

NEW YORK CIVIL LIBERTIES UNION
   FOUNDATION, by

*/s/ Christopher Dunn*
CHRISTOPHER DUNN
MOLLY K. BIKLEN
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300

August 13, 2020
New York, N.Y.

*Counsel for the New York Civil Liberties*
   *Union*

On the brief: JORDAN LARIS COHEN

22

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing Brief of the New York Civil Liberties Union in Opposition to Plaintiffs-Appellants' Motion for a Stay Pending Appeal:

(1) complies with Federal Rules of Appellate Procedure 27(d)(2)(A), stating that the total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of citations, and certificate of compliance, is 5,136; and

(2) complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Procedure 32(a)(6), which are made applicable by Rule 27(d)(1)(E) because it has been prepared using 14-point Times New Roman proportionally spaced typeface, double-spaced, with 12-point single-spaced footnotes.

Dated:　　　August 13, 2020
　　　　　　New York, New York

　　　　　　　　　　　　　　　*/s/ Christopher Dunn*
　　　　　　　　　　　　　　　Christopher Dunn
　　　　　　　　　　　　　　　Attorney for the New York Civil Liberties
　　　　　　　　　　　　　　　　Union

23